Good morning, Your Honors. Kyle Worrell, student at Chapman University School of Law, under the supervision of Catherine M. Davis and Peter Afrasiabi, pro bono appointed counsel for Petitioner Mr. Wu-Cheng. If I may, I would like to reserve two minutes for rebuttal. Your Honors, this case presents two issues. First, whether a petitioner who arrives late for his immigration hearing while the immigration judge is still in the courtroom constitutes a failure to appear for purposes of removal in absentia. Second, alternatively, does a petitioner establish exceptional circumstances whereas here the petitioner diligently pursues relief and through no fault of his own relies on a third party who has been hired to facilitate communication with the attorney. He really can't establish exceptional circumstances, can he, counsel? Our position is that we can... I know that's your position, but I'm just asking you the reality. I mean, when you look at the case law and what constitutes exceptional circumstances, his claim seems to be justified by the record that he was there, he just got there late. And the case law may help you a great deal in this situation, but I just want to be sure we understand each other that under exceptional circumstances, I mean, he doesn't have anybody dying, he has a serious medical problem or anything like that. Do you agree with that? I agree that, and thank you, Your Honor. In his case, he does not establish exceptional circumstances under the statutory provisions for serious illness or death penalty, as you've stated. However, this Court's case law has evaluated exceptional circumstances under the totality of the circumstances standard. Well, counsel, Mr. Borel, you decided in your brief the Buk-Mirovich case, and yet it was just reversed on re-hearing. If that case is no longer good law, do you have any case to support your argument? Yes, we do. First of all, a couple points on the Buk-Mirovich case. In that case, the petitioner was seeking exceptional circumstances under the no-failure-to-appear argument, which had been presented in CMVI-NS. On re-hearing, the panel re-hearing, the Court found that the petitioner in that case had not established the same type of diligence as was found in the first case of CMVI-NS. And also, they looked to the nature of the relief, the fact that it was discretionary, and said that it was not likely that he would be able to establish relief on that basis. Now, essentially, the exceptional circumstances cases, when they look at the totality of the circumstances, focus on both diligence and the nature of relief. In CMVI-NS, it was a win for the petitioner on both counts. In Buk-Mirovich, as noted in the hearing, re-hearing, he failed on both bases. Our position is that the petitioner was diligent and has at least a substantial likelihood or shows eligibility for relief under asylum. Counsel, is Paris v. Mukasey your best case? Yes, it is. And we have a presentation on that case, and we'd like to argue that case, first and foremost, to receive relief under that ground. That one really doesn't deal with exceptional circumstances. It just says, if he's there, a little bit late, but he's there when the Court's still in session, he's treated as being there. Isn't that effectively the ruling? Yes, it is. They don't really have to get into the exceptional circumstances argument in order to get relief? That is true. Thank you, Your Honor. Our position is that, first, we would like to have relief granted under Paris v. Mukasey. And if, for some reason, the Court finds that it doesn't control or that there was a failure to appear for some reason in this case, then we would argue exceptional circumstances. We don't really need to get to exceptional circumstances if we view the Paris case as being controlling, right? Absolutely. Counsel, has the BIA made any findings as to whether your client actually appeared or not? Has the BIA itself made any findings? Right. Did the BIA make any findings as to whether your client appeared or not? In the BIA's order, the BIA did not expressly find one way or the other. However, the evidence was presented in front of the BIA. The Board of Immigration Appeals had three declarations in front of it. One from the petitioner, one from petitioner's counsel, and one from petitioner's interpreter, all stating that he appeared to court for his hearing. Well, I have a number of questions about those declarations. But just in terms of what the BIA did, did the BIA assume that he didn't show up or did it assume that he did show up? The BIA, to reach exceptional circumstances, one would assume that the BIA first decided that the petitioner had failed to appear. Okay. Now, does that mean that they found that he didn't appear or does that mean that they simply said, even if he did appear, these are not exceptional circumstances? Your Honor, I'm not exactly sure. Did they even cite Perez? No, the BIA did not cite Perez. Okay. And the reason for that is because Perez came out afterwards. Afterwards. So why shouldn't we send this back to the BIA and let them sort all of this out? Nobody apparently has held a hearing as to whether he showed up or not. Nobody's tested the declarations. You've got two declarations that appear to be based on hearsay. Isn't that right? I can't see that either the lawyer or the translator offered any independent knowledge of your client's attendance at the hearing. They're relying on his word. Yes, Your Honor. And if that's true, then these declarations really are of no value whatsoever. All right. Thank you, Your Honor. Indeed, under INS v. Orlando Ventura, aren't we required to send this back for fact-finding if, indeed, we agree that Perez controls? If I may, I'd like to respond to both questions. First, the declarations offered were offered upon personal knowledge of, it says in the declarations, on personal knowledge of the attorney and the interpreter. Did they explain the basis? I thought, was the attorney there? No, the attorney was not there. Then how would he know that? How is that his personal knowledge? Unless your client told him, which is something, but it doesn't really help anybody. I understand, Your Honor. Our other response to that would be the fact that the government did not oppose to these declarations being offered into evidence or being offered in front of the board of members. Yes, I don't see any basis for it. Well, they may or may not have objections to it once they get to that. There certainly should not be any objection to your client providing his declaration, which is going to be the basis for everything else here. But nobody's ever really tested it. That's true. So why shouldn't we send this back to the board and let them test this if in light of Perez? Your Honor, first we would like to have the case decided on the record as it existed before the BIA. The BIA had all the declarations. Yeah, but they didn't have the law. And the law may inform what facts they think are relevant. They had, the board had the case of Nazarova v. INS, which although it's not an express failure to appear case, it set out a distinction between a failure to appear at all and a failure to appear on time. And moreover, the Nazarova case cited to this circuit's case in Gerozano v. INS. Did the BIA cite any of those cases? No, the BIA, I'm not sure if the, the BIA cited Valencia-Fergoso and maybe one other case, but they did not cite those other cases. Just for housekeeping purposes, is it fair to say that we don't really have jurisdiction over the IAC and the due process claims because they really were not raised below, and therefore it's not exhausted? Your Honor, our position again is that they were fairly raised to the board. On what basis? What do you cite in the record that would substantiate that position? The attorney's declaration, the fact that in the Attorney's declaration with respect to what? With respect to the ineffective assistance of counsel claim. But I mean, what did Wu Cheng argue before the BIA with respect either to the IAC or procedural due process? With respect to the ineffective assistance of counsel, in the appellate brief to the board, Mr. Wu Cheng cited Lozada and explained his, the reason he didn't file a complaint against the attorney. But he specifically said he doesn't wish to complain about his attorney's performance. That's a little inconsistent with Lozada, isn't it? That is true. My point, counsel, is simply that, you know, you have to raise these things fairly. I mean, they don't have to be, you know, brilliantly written out in some form, but they have to put flesh on a skeleton. They can't just cite Lozada and say that's an IAC claim, particularly when he goes thereafter and says that he's not complaining about his attorney's performance. By definition, an IAC claim constitutes a complaint about your attorney's performance, and it wasn't fleshed out. Neither was a due process claim. Would you agree that really we're looking at Perez here and what we do with this if you're right about Perez? Isn't that a correct analysis of where we stand? We would, yes, Your Honor. We would like to have, I see that my time is almost running out. May I briefly respond? We would like to have the case decided on Perez. And if we don't need to reach exceptional circumstances, that is fine in our case. If we do, we feel that we have established enough of a basis citing to CBINS for exceptional circumstances, showing Mongero's, Munoz, and the cases for ineffective assistance of counsel. It was clear on the face of the record for ineffective assistance of counsel. The judge noted it in his order coming from the motion to reopen, and with all of those facts on the face of the record, there's enough to establish those claims. Thank you. Thank you, counsel. You've used all of your time, but we took up a lot of your time. I'm going to allow you one minute for rebuttal. Thank you, Your Honor. We'll hear from the governor, Ms. Kerlin. Welcome back. May it please the Court, my name is Elizabeth Kerlin, and I represent the United States Attorney General who is the respondent in this case. Your Honors, the main issue in this case is whether the Board was obligated to consider all possible challenges to Petitioner's in absentia order when Petitioner, who was represented by counsel, solely relied on the argument that exceptional circumstances prevented him from appearing at the removal hearing, rather than the different claim that he did not fail to appear under 240b-5a. So you're claiming that wasn't raised at all? Yes, Your Honor. And wasn't it encapsulated in his other argument? Your Honor, our position We have case law that says it doesn't have to be specific, but if it's part of the argument, then we can consider it. Well, Your Honor, our position is that even if the facts are there to support an argument, the standard for exhaustion should not be based upon the fact that the facts are there, because requiring that standard would mean that the Board would have to go over the record and review all of the facts, and then, particularly in the case of the Petitioner's represented by counsel, pick out and flesh out what arguments that Petitioner may or may not have brought before him. Isn't it a little different, counsel, when you're talking about an in absentia ruling? Admittedly, if everybody's engaged in a process and evidence is presented, we have a whole different ballgame. But here, we get to the very essence of this. The man claims he was there. He may or may not have been there, but he claimed he was there. That was clearly part of the record, as Judge Nelson indicated. And under the Supreme Court's case law, it seems to me that we really have little choice but to send this back to take a look at it again. Let's have a trier of fact, take a look at it, consider it, and reject it or accept it. But it's a little difficult for the government to complain that it's been poorly done by when the essence of this was raised, and it goes to the very heart of the proceeding itself, whether it can get started. It's kind of a tough thing to do something in absentia unless you've really got a solid case. Well, Your Honor, the reason why we're making this exhaustion argument is because we feel that that standard, that the Board reasonably construed the arguments that Petitioner placed before them, especially in the case of the petitioners represented by counsel. Now, this Court has case law that says that the Court will construe liberally a pleading in the case of a pro se petitioner. But that is not the circumstance of a petitioner who's represented by counsel, and that is of great concern. And he says his counsel was inadequate. Now, what do you do with the case of Kaganovich v. Gonzalez? It seemed to me it established that an individual need only include a simple statement with no argument in order to exhaust his claim before the BIA. And he did indeed mention that he did not, quote, fail to appear entirely. Why isn't that sufficient under our case law? Because, Your Honor, in this circumstance, Petitioner made that statement in connection to support his claim that exceptional circumstances existed. And his counselor was arguably aware of the alternative due process claims based on the Seventh Circuit case that she cited. So for whatever reason, she chose not to present that claim. And the Board should not be required in the first instance to look at that and step into the petitioner's shoes and figure out what alternative arguments those facts may have established. And this Court is particularly cognizant of that exhaustion issue because in Morales-Alegria, the Court found that the Board should not be expected to parse through the record and pick out those arguments. But at least as I understand it, at AR-6, AR-7, AR-8, AR-10, and AR-11, Wu Cheng specifically laid out what happened to him. It wasn't left silent before the BIA. For example, in AR-6, he says, due to being misinformed regarding the time for his hearing, he found that Wu appeared at 1 o'clock for his master hearing instead of 9 a.m. And then go on in AR-7, he diligently appeared alone in court on March 1, 2006, and so on. He laid this out. It's actually fairly detailed. Now, credible? I don't know. That's another issue. But for purposes of exhaustion, doesn't the government have a bit of a rough case on that? Again, Your Honor, the whole point of this exhaustion issue, in the case of a petitioner who's represented by counsel, is the basis of our argument is that it's not enough that the facts are there. That petitioner who's represented by counsel has to make that argument. And this Court, as recently as this year in Young v. Holder, relied on Morales-Alegría and found in the situation of a pro se petitioner where the facts were there, that this individual, Young, was convicted of a controlled substance offense. And he was found removable under both basis, controlled substance and an aggravated felony. He only argued aggravated. I'm sorry, Your Honor. I'm sorry. I should interrupt. Time is so short. What do you do with the Ninth Circuit case, Socop-Gonzalez v. INS, where the Court excused a petitioner's conflation of two different claims, only one of which was meritorious? Why wouldn't that same theory apply here? Because in this case, there was no conflation of the issues. What he mentioned, that he failed to appear entirely when he was talking about exceptional circumstances. Isn't that a conflation? No. What it is is that we read that to be a fact, an assertion of fact. And that our reading of the record is supported by the fact that the IJ, in adjudicating the motion to reopen, made no findings at all with regards to whether a petitioner was there or not. There was even a question that the IJ raised with regards to that. And the Board, in affirming that, the IJ's denial of the motion to reopen did so based on, again, the exceptional circumstances argument. So our position is based upon the fact that the petitioner didn't. The Board reasonably conceded. Counsel, hasn't the legal landscape changed, though, with our intervening decision in Perez? Had the Board had our intervening decision in Perez, it surely would have framed the arguments that the petitioner made before them. And it might have altered petitioner's arguments. I mean, certainly if you've been represented by counsel, we would have expected counsel to have discovered Perez. Well, Your Honor, we argue that the issue wasn't exhausted. But the reason why our position that if the Court disagrees with us, then it should remand the case, is based upon that. It's based upon the fact that given this gray area and the fact that Perez was not before the Board, that if the Court should disagree with our argument about whether the petitioner is exhausted and find that the Board should have considered that argument, then the Court should remand to the agency to determine that fact-specific issue in the first instance. And that's what we're asking for. I would also ask you, our case, Soco-Gonzalez v. INS, which was a 2001 case proceeding Perez, we held that the petitioner's equitable estoppel argument was sufficiently related to equitable tolling that it was okay. I think it kind of falls into the same concept, does it not? Admittedly, he went on to argue the circumstances argument, which probably doesn't go anywhere. But the other one, a little different deal. So does the government agree, then, if we find that Perez and perhaps Soco control this issue, that the right thing to do is to send it back for a fact-finding, right? Yes. There aren't enough facts here for us to make a determination based on that record. Yes, Your Honor. And that is the basis. That is the reason and the basis for our alternative request for a remand. Okay. So I see that my time is almost up. I'd like to just close that, say in closing that if the Court should agree with us on the exhaustion issue, then it should dismiss this petition for review in part and deny it in part. Thank you. Thank you, counsel. If I may, Mr. Worrell, we'll certainly give you a minute. Thank you, Your Honor. We respectfully submit that the case should not be remanded to the board. Remand, if at all, should go to the immigration judge's finder of fact. The issue was exhausted. How do we remand to an IJ? Remand to the board with instructions to remand to the immigration judge. If the issue was exhausted, the Perez case is not new. The finding of the immigration judge on the bench in late appearance has been cited as early as 1999 in this court in Gerizano. The government did not oppose the evidence. The petitioner cited Nazarov of the INS and explained his failure to appear argument shortly thereafter. And the board had this record on remand. Just because the board didn't make a decision doesn't mean it wasn't before the board. And with that, we conclude that Perez should control. Good. Thank you. Thank you very much. And the court wishes to thank you, Mr. Worrell, and Chapman University for a very, very fine job. Your client was very well represented. We thank you for participating in our pro bono program. Wu Chang versus Holder, then, is ordered submitted on the briefs and then the argument. The next case will be Hurtado versus Runnels.
judges: Nelson D. W., Bybee, Smith M.